IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WELSH,                                    )
217 College Avenue                              )
Oakmont, PA 15139                               )
                                                )       CASE NO. _____
        Plaintiff,                              )
                                                )       JUDGE _____
        -vs-                                    )
                                                )
LA MACCHIA GROUP, INC.                          )
157 North Milwaukee Street                      )       **COMPLAINT WITH JURY DEMAND**
Milwaukee, WI 53202                             )
                                                )
        -and-                                   )
                                                )
RALPH LA MACCHIA                                )
c/o La Macchia Group, Inc.                      )
157 North Milwaukee Street                      )
Milwaukee, WI 53202                             )
                                                )
        -and-                                   )
                                                )
TOM KENNEDY                                     )
c/o La Macchia Group, Inc.                      )
157 North Milwaukee Street                      )
Milwaukee, WI 53202                             )
                                                )
        -and-                                   )
                                                )
MICHAEL MEEKMA                                  )
c/o La Macchia Group, Inc.                      )
157 North Milwaukee Street                      )
Milwaukee, WI 53202                             )
                                                )
        -and-                                   )
                                                )
JOHN DOE, ## 1-5                                )
Address Unknown                                 )
                                                )
        -and-                                   )
                                                )
JOHN DOE, INC., ## 1-5                          )
Address Unknown                                 )
                                                )

1

## INTRODUCTION

1.      This is a case brought against Defendant La Macchia Group, Inc. and certain of its principals, agents, and/or representatives, some of whom are presently unknown, for their part in a corporate spying campaign that systematically violated the privacy rights of Plaintiff David Welsh, in violation of the federal Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701 *et seq.*, the common law of the Commonwealth of Pennsylvania, and Nevada Revised Statutes §§ 200.610 *et seq.*

## PARTIES

2.      Plaintiff David Welsh ("Plaintiff") is, and was at all relevant times, a citizen of the Commonwealth of Pennsylvania and a resident of the Western District of Pennsylvania, and who at all relevant times resided at 217 College Avenue, Oakmont, PA 15319 ("Oakmont Residence").

3.      Defendant La Macchia Group, Inc. ("La Macchia Group") is, and was at all relevant times, a Wisconsin corporation with its principal place of business located at 157 North Milwaukee Street, Milwaukee, WI 53203.

4.      Defendant Ralph La Macchia ("Ralph La Macchia") is, and was at all relevant times, the Chairman of the Board of La Macchia Group, a company which he founded and which bears his name.  Upon information and belief, Ralph La Macchia is, and was at all relevant times, a resident of the State of Wisconsin.

5.      Defendant Tom Kennedy ("Kennedy") is, and was at all relevant times, the President of La Macchia Group.  Upon information and belief, Kennedy is, and was at all relevant times, a resident of the State of Wisconsin.

6.     Defendant Michael Meekma ("Meekma") is, and was at all relevant times, the Director of Information Technology of La Macchia Group.  Upon information and belief, Meekma is, and was at all relevant times, a resident of the State of Wisconsin.

7.     Defendants John Doe, ## 1-5, are employees, agents, representatives, contractors, and/or subcontractors of La Macchia Group or the other named Defendants, whose identities are presently unknown to Plaintiff but can be ascertained through reasonable discovery.

8.     Defendants John Doe, Inc., ## 1-5, are contractors and/or subcontractors of La Macchia Group or the other named Defendants, the identities of which are presently unknown to Plaintiff but can be ascertained through reasonable discovery.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case involves a claim arising under the laws of the United States, specifically the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*

10.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and this is a civil action in which the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     This Court has supplemental, pendent, and ancillary jurisdiction over the Nevada state law claim in this case because it derives from a common nucleus of operative fact with the Pennsylvania claims; because it is so related to the Pennsylvania claims as to form part of the same case or controversy; because federal and Pennsylvania state claims heavily predominate; and because considerations of judicial economy, fairness, convenience to litigants, and a low likelihood of confusion to jurors suggest that the Court should exercise supplemental jurisdiction.

12. This Court has personal jurisdiction over the Defendants because a substantial, and in fact the primary, part of the events and conduct giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania. The privacy violations complained of herein resulted from Defendants' purposeful and tortious acts directed and expressly aimed toward a citizen of the Western District of Pennsylvania, primarily while he was located here, such that the Western District of Pennsylvania can be said to be the focal point of the tortious activity. Further, Plaintiff felt the brunt of the harm in the Western District of Pennsylvania, such that the District can be said to be the focal point of the harm suffered by Plaintiff as a result of Defendants' tortious conduct.

13. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial, and in fact the primary, part of the events or omissions giving rise to the claims herein occurred in the Western District of Pennsylvania. Further, Pennsylvania has the greatest material interest in protecting the citizens of the Commonwealth of Pennsylvania and enforcing the Pennsylvania Wiretapping and Electronic Surveillance Control Act, given that the interception of Plaintiff's communications primarily occurred within the borders of Western District of Pennsylvania.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment with La Macchia Group

14. Plaintiff entered into an employment relationship with La Macchia Group in or about February 2018. His duties included the sale and/or management of design/build projects for financial institutions.

15. Plaintiff primarily worked for La Macchia Group remotely. His primary workplace was a home office located in the Oakmont Residence. His work also involved a great deal of

travel, including but not limited to trade shows, business development meetings, and other meetings relating to the sale or management of design/build projects.

16.    Plaintiff's primary computer for use in his employment was a laptop provided by La Macchia Group ("Laptop").  Plaintiff also used a personal cell phone and other devices, but the Laptop was generally used at all times.

17.    The Laptop was often located in Plaintiff's home office in the Oakmont Residence, but over the years that he worked for La Macchia Group, the Laptop would generally have been located wherever Plaintiff was located.

18.    These locations included other parts of the Oakmont Residence; hotel rooms and other spaces that Plaintiff occupied while traveling; and other locations in which Plaintiff had a reasonable expectation of privacy.  Plaintiff did not know that the Laptop was a threat to his personal privacy, and where Plaintiff went for business, the Laptop generally went as well.

19.    On April 1, 2024, Plaintiff notified La Macchia Group of his resignation from employment.  Plaintiff provided two weeks' notice at that time.  Since April 15, 2024, Plaintiff has been employed with Build with Altitude, LLC, a company which he founded.

**B.    La Macchia Group Sues Plaintiff in Wisconsin State Court**

20.    On May 17, 2024, La Macchia Group sued Plaintiff in the Circuit Court for Milwaukee County, in the State of Wisconsin.  La Macchia Group initially filed two duplicative lawsuits, which were eventually consolidated into Circuit Court Case No. 2024 CV 004016 ("Wisconsin Case").

21.    The Wisconsin Case claims will not be duplicatively litigated here, but they are, without exception, meritless.

22.     In fact, on October 11, 2024, Judge McAdams of the Milwaukee County Circuit Court dismissed La Macchia Group's entire complaint, but granted leave to file an amended complaint.

23.     La Macchia Group filed an amended complaint in the Wisconsin Case on October 17, 2024.  In a transparent attempt to bolster its case, La Macchia Group disclosed the existence of extensive recordings of Plaintiff and others, apparently created through Plaintiff's La Macchia Group Laptop.  The shocking illegality of these recordings, largely created in the Western District of Pennsylvania, is the subject matter of this case.

24.     In the Wisconsin Case, La Macchia Group has asserted that the interception of these communications was legal because Plaintiff consented to it in employment documents.  La Macchia Group has not asserted that it sought or received consent from any other party to any of these communications.

25.     In addition to the lack of consent from any other individuals, La Macchia Group's claim that Plaintiff consented is nonsense.  La Macchia Group has essentially conducted open-ended surveillance on Plaintiff and others in the privacy of his own home, in hotel rooms, and in other private spaces at any time that the Laptop was open and powered on.  No one – not Plaintiff and not anyone else – ever consented to this kind of blanket, open-ended personal surveillance.

C.     **The Nature of the Recordings**

26.     Upon information and belief, it is evident from the recordings that have been provided to Plaintiff that the only way they could have been created as they exist is by utilizing software to convert the Laptop into a listening device, which was potentially recording Plaintiff or others at any time that the Laptop was open and powered on, whether or not the Laptop was being used for its ordinary business purpose.

6

27.    In addition to being referenced in the amended complaint, copies of the recordings were provided to Plaintiff and his counsel in the Wisconsin Case on or about October 10, 2024, in response to a discovery deadline for documents to be used at an injunction hearing.

28.    The recordings that have been provided so far – which are most likely not the only ones that exist – include the following.  Upon information and belief, in each recording, the video appears to be the full screen of the Laptop, while the audio seems to be a full recording of everything that is taking place within range of the Laptop's microphone:

a.    January 5, 2024:  an audio and video recording, 1:34:35 in length, of Plaintiff, Danielle Havlicek ("Havlicek"), and Brian Midock ("Midock").  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in either Pennsylvania or Virginia.  Neither Havlicek nor Midock were La Macchia Group employees during this recording, or any subsequent recording.

b.    January 12, 2024:  an audio and video recording, 55:19 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in Virginia.

c.    January 17, 2024:  an audio and video recording, 2:20:08 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, all three parties were located in Ohio.

d.    January 29, 2024:  an audio and video recording, 1:15:55 in length, of Plaintiff, Havlicek, Midock, and a bank officer.  Upon information and belief, during this recording, Plaintiff was located in Florida, Havlicek was located in Wisconsin, Midock was located in Virginia, and the bank officer was located in New Jersey.

e.    January 31, 2024:  an audio and video recording, 44:13 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock's location is unknown.

f.    February 2, 2024:  an audio and video recording, 1:01:17 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock's location is unknown.

g.  February 5, 2024:  an audio and video recording, 53:54 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in Virginia.

h.  February 12, 2024:  an audio and video recording, 57:34 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania; Havlicek's and Midock's locations are unknown.

i.  February 16, 2024:  an audio and video recording, 59:19 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in Virginia.

j.  February 19, 2024:  an audio and video recording, 2:02:02 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in Pennsylvania.  During the beginning of this recording, a phone call between Plaintiff and a vendor was recorded – each caller was using their phone, and the conversation was on speaker.  The Laptop recorded this conversation as well.

k.  February 23, 2024 (first recording):  an audio and video recording, 35:27 in length, of Plaintiff, Havlicek, Midock, and a bank officer.  Upon information and belief, during this recording,Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, Midock was located in Virginia, and the bank officer was located in New York.

l.  February 23, 2024 (second recording):  an audio and video recording, 18:04 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Wisconsin, Havlicek was located in Wisconsin, and Midock was located in Virginia.

m.  February 26, 2024:  an audio and video recording, 1:19:58 in length, of Plaintiff, Havlicek, Midock, and an accountant.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, Midock was located in Virginia, and the accountant was located in Pennsylvania.

n.  February 28, 2024:  an audio and video recording, 1:01:11 in length, of Plaintiff and a bank officer.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania and the bank officer was located in New Jersey.

o.    March 4, 2024: an audio and video recording, 51:34 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in the District of Columbia, Havlicek was located in Wisconsin, and Midock was located in Virginia.

p.    March 18, 2024: an audio and video recording, 26:23 in length, of Plaintiff, Havlicek, and Midock.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, Havlicek was located in Wisconsin, and Midock was located in Virginia.

q.    March 21, 2024: an audio and video recording, 18:58 in length, of Plaintiff and a bank officer.  Upon information and belief, during this recording, Plaintiff was located in Wisconsin, and the bank officer was located in New Jersey.

29.    The recordings also include the following.  Upon information and belief, in each recording, the video appears to be the full screen of a laptop, while the audio seems to be a full recording of everything that is taking place within range of the laptop's microphone. Given that Plaintiff was no longer employed by La Macchia Group at this time, the recordings would likely not have been made from Plaintiff's Laptop but from the laptop of another La Macchia Group employee (i.e., Yolanda Chavez ("Chavez")):

a.    April 18, 2024: an audio and video recording, 13:30 in length, of Plaintiff and Chavez.  Upon information and belief, during this recording, Plaintiff was located in Pennsylvania, and Chavez was located in Arizona.

b.    May 21, 2024: an audio and video recording, 15:04 in length, of which the video is a recording of a computer desktop, and the audio is primarily a recording of a cell phone call between Plaintiff and Chavez.  Upon information and belief, during this recording, Plaintiff and Chavez were both in Nevada at the same conference, in their respective hotel rooms.  The recording disclosed by La Macchia Group begins *before* Chavez places a phone call to Plaintiff, at which point she is having a conversation with her husband in the privacy of her hotel room.

30.    By no means does Plaintiff believe that these recordings – which La Macchia Group presumably selected to bolster the Wisconsin Case – are the only communications of Plaintiff and others that La Macchia Group intercepted.

31.     Upon information and belief, the recordings described above are a sample of a much larger pool of recordings made and maintained by La Macchia Group,.

32.     Not only did La Macchia Group eavesdrop on and record Plaintiff and others while he was employed there – it continued to do so after he was gone.

**D.     The Type of Device Which Would Produce These Types of Recordings**

33.     The audio and video recordings described above provide proof that La Macchia Group was using the Laptop as a recording device to eavesdrop on conversations that did not make use of the Laptop, but simply happened near the Laptop microphone.

34.     La Macchia Group's actions evidence a pervasive program of LaMacchia Group to spy on its employees, and third parties, in both their work <u>and</u> private lives.

35.     The sample of recordings in Plaintiff's possession to date was selected by La Macchia Group, but it nonetheless demonstrates certain facts, to the extent that they can presently be known to Plaintiff without discovery, relating to La Macchia Group's corporate spying program.

36.     The specific technology/ies or device(s) which were used by La Macchia Group to intercept the communications of Plaintiff and others is not presently known to Plaintiff.

37.     However, the recordings are inconsistent with any hardware, software, or other device installed on Plaintiff's phone because the recordings begin before phone calls start and end after phone calls end.

38.     Further, the recordings are inconsistent with any hardware, software, or other device installed on anything but the Laptop because perfectly faithful video recordings of a computer desktop screen are a constant feature in the recordings.

39.     Further, the recordings are inconsistent with any hardware, software, or other device that was activated by the placing of a phone call or the typing of an email – again, because the recordings include oral communications taking place near an open laptop both before and after the placing of a phone call, such as the conversation between Chavez and her husband.

40.     Upon information and belief, the recordings are consistent with only one category of hardware, software, or other device: audio/video recording software that was installed on the Laptop (or those of other La Macchia Group employees), which activated and/or accessed, or had the capability to activate or access, the pinhole microphone of the laptop computer at any time that the "clamshell" of the computer was open or unfolded.

41.     No other possibility explains how La Macchia Group is in possession of perfectly faithful recordings of the Laptop's screen, coupled with audio recordings of phone conversations conducted on other devices.

42.     No other possibility explains how La Macchia Group is in possession of hours-long recordings made up of a combination of phone calls and Zoom meetings, again with consistent, perfectly faithful recordings of the Laptop's screen.

43.     No other possibility explains how La Macchia Group is in possession of a recording of Chavez talking to her husband in the privacy of her hotel room, coupled with a consistent, perfectly faithful recording of her laptop's screen.

44.     Upon information and belief, La Macchia Group utilized eavesdropping software installed on the Laptop, and on those of other La Macchia Group employees, to systematically eavesdrop on, and record, its employees and others – wherever they were – whenever they conducted any audible activity at all, within range of the pinhole microphone of a La Macchia Group laptop.

45.     Neither Plaintiff, nor anyone else recorded as part of the known audio recordings, consented to this kind of blanket recording, systematic violation of individual privacy rights, and spying.

46.     Upon information and belief, the recording software could be installed, maintained, and operated through the use of a mobile device manager and/or application device manager, which – for example – could be programmed to push eavesdropping software onto any device on which an individual logs on to La Macchia Group's servers by using a La Macchia Group ID and password.

47.     The recordings are inconsistent with any technology that would limit the eavesdropping to legitimate business conversations.  They are, in fact, inconsistent with any technology that would limit the eavesdropping by subject matter at all.  Given the nature of the recordings already disclosed, the recording technology did not limit the eavesdropping to legitimate business conversations.

48.     The recordings are consistent with software which is voice-activated and/or activated by sound – for example, by any person, making any sufficiently audible sound, within range of the pinhole microphone of any device upon which La Macchia Group's spying software had been installed and was at that moment active.

49.     Upon information and belief, La Macchia Group has been spying on its employees, its former employees, and anyone they interact with any time a La Macchia Group computer is nearby.

50.     La Macchia Group has spied in the privacy of the Oakmont Residence, where the Laptop was located.

51.    La Macchia Group has spied in the privacy of Plaintiff's and Chavez' hotel rooms, where the laptop recorded a marital conversation.

52.    When discovery is conducted, and the Court's analysis is not limited to recordings which La Macchia Group has hand-selected as advantageous to the Wisconsin Case, it may be discovered that La Macchia Group has spied in contexts far more egregiously violative than those presently known to Plaintiff.

53.    La  Macchia Group and the other Defendants have done all of this in a way that systematically violates the privacy rights of everyone who comes into contact with one of their laptops, and if their conduct in the Wisconsin Case is any indication, they believe what they have done is neither wrong nor illegal.

54.    In actual fact, what La Macchia Group and the other Defendants have done systematically violates the Electronic Communications Privacy Act of 1986 ("ECPA"), specifically that portion of ECPA which is generally known as the Wiretap Act, 18 U.S.C. §§ 2510-2523; the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701 *et seq.*; the common law of the Commonwealth of Pennsylvania; and Nevada Revised Statutes §§ 200.610 *et seq*.

## E.    The Responsibilities of the Individual Parties

55.    It is inconceivable that La Macchia Group would engage in a deception and a corporate spying program of this magnitude without the active participation of certain individuals.

56.    Defendant Ralph La Macchia is the Chairman of the Board of La Macchia Group. Ralph La Macchia makes all major policy decisions of La Macchia Group.  No one at La Macchia Group would have the authority or the means to order a corporate spying program of this magnitude, except for Ralph La Macchia.

57.     Defendant Tom Kennedy is the President of La Macchia Group.  What Ralph La Macchia decides, Tom Kennedy executes.  Just as no one at La Macchia Group but Ralph La Macchia could order a program of this magnitude, no one but Tom Kennedy would be entrusted with executing it.

58.     Defendant Michael Meekma is the Director of Information Technology of La Macchia Group.  Neither Ralph La Macchia nor Kennedy possesses the technical knowledge to oversee the actual installation or use of monitoring software.  Upon information and belief, Meekma would have been an active participant in doing so, and anyone else working on this program would have done so under his supervision.

59.     Defendants John Doe, ## 1-5 are named because it is likely that the named Defendants employed other individuals, whether employees, contractors, or subcontractors, to participate in and manage this corporate spying program.  Such persons are unknown to Plaintiff at this time, but their identity could be ascertained through reasonable discovery, as is permitted under the Federal Rules of Civil Procedure.  Under the relevant laws as set forth below, such individuals would also be liable for their participation in the scheme.

60.     Defendants John Doe, Inc., ## 1-5 are named because it is possible that the named Defendants employed an outside contractor or contractors, operating through a corporate or limited liability form, to participate in and manage this corporate spying program.  Such entities are unknown to Plaintiff at this time, but their identity could be ascertained through reasonable discovery, as is permitted under the Federal Rules of Civil Procedure.  Under the relevant laws as set forth below, such entities would also be liable for their participation in the scheme.

## COUNT ONE

## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT OF 1986/WIRETAP ACT, 18 U.S.C. §§ 2510-2523

61.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through sixty (60) above, as if the same were fully rewritten herein.

62.     18 U.S.C. § 2520 provides a private right of action to any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the ECPA, specifically that portion which is generally known as the Wiretap Act, 18 U.S.C. §§ 2510-2523.

63.     In combination with 18 U.S.C. § 2520, 18 U.S.C. § 2511(1)(a) provides that any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications shall be subject to recovery of such relief as may be appropriate.

64.     Plaintiff is a person whose wire, oral, and/or electronic communications have been systematically intercepted by Defendants, intentionally and acting in concert.

65.     Plaintiff's intercepted communications have been intentionally disclosed by Defendants, acting in concert.

66.     Plaintiff's intercepted communications have been intentionally used in violation of ECPA, by Defendants, acting in concert.

67.     Plaintiff has suffered actual damages as a proximate result of this conduct, including but not limited to the fact that these illegally acquired recordings have formed a significant part of the Wisconsin Case.

68.     The conduct of Defendants was outrageous, malicious, oppressive, and in reckless disregard of Plaintiff's rights and reflects a complete indifference to Plaintiff's rights.

WHEREFORE, Plaintiff respectfully demands actual damages in an amount in excess of $75,000.00 and as computed in 18 U.S.C. § 2520(c); statutory damages pursuant to 18 U.S.C. § 2520(c)(2)(B); punitive damages; such preliminary and other equitable or declaratory relief as may be appropriate; an award of his reasonable attorneys' fees and other litigation costs, pursuant to 18 U.S.C. § 2520(b)(3); and such other and further relief as the Court deems just.

## COUNT TWO

### VIOLATION OF THE PENNSYLVANIA WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT, 18 Pa.C.S. §§ 5701 *et seq.*

69.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through sixty-eight (68) above, as if the same were fully rewritten herein.

70.    The Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA," previously known as the Pennsylvania Wiretap Act, or "PWA"), specifically 18 Pa.C.S. § 5725(a), creates a private right of action for any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of WESCA, against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose, or use such communications.

71.    Plaintiff engaged in such communications, many times, over a very long period of time.

72.    These communications were oral and were conducted in the privacy of his home, his office, his hotel rooms, and other spaces in which he had a reasonable expectation of privacy.

73.    Plaintiff possessed an expectation that these communications would not be intercepted.

74.    Plaintiff's expectation that the communications would not be intercepted was justifiable under the circumstances.

75.     Defendants systematically intercepted Plaintiff's communications through the use of an electronic, mechanical, and/or other device, as more fully set forth above.  Those Defendants who did not personally do so encouraged and/or procured their co-Defendants to do so.

76.     Such interceptions happened primarily in the Commonwealth of Pennsylvania and in the Western District, at the moment that the communications were captured or redirected by the software operating on the Laptop or the laptops of other La Macchia Group employees.

77.     Defendants never, at any point, sought or received the consent of all parties to any given communication that they intercepted, in violation of WESCA.

78.     Defendants never, at any point, sought or received consent to spying of this breadth and nature from anyone at all, including Plaintiff.

79.     Plaintiff has suffered damages as a proximate result of the Defendants' conduct.

80.     Defendants' conduct was outrageous, willful, wanton, and reckless because of the Defendants' evil motive and their reckless indifference to the rights of others.

WHEREFORE, Plaintiff respectfully demands actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher, pursuant to 18 Pa.C.S. § 5725(a)(1); punitive damages pursuant to 18 Pa.C.S. § 5725(a)(2); and reasonable attorneys' fees and other litigation costs reasonably incurred, pursuant to 18 Pa.C.S. § 5725(a)(3), and such other and further relief as the Court deems just.

## COUNT THREE

## INVASION OF PRIVACY – INTRUSION UPON SECLUSION

81.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through eighty (80) above, as if the same were fully rewritten herein.

82.     Pennsylvania common law recognizes the tort of invasion of privacy, one type of which is intrusion upon seclusion.

83.     Plaintiff has an objective, reasonable expectation of privacy in his home, in hotel rooms, and in other spaces in which such expectations are objectively reasonable.

84.     Defendants intentionally intruded into Plaintiff's private life without consent, or far beyond the scope of any consent given, by utilizing spying technology, which could record literally anything Plaintiff did that made an audible sound.

85.     Many ordinary life activities – some of them incredibly personal and private – cause human beings to emit sounds loud enough to trigger Defendants' corporate spying program.

86.     Defendants caused a device to be present in Plaintiff's home, in his hotel rooms, and elsewhere, which was capable of recording any sound Plaintiff produced, provided that he did so within range of the Laptop's pinhole microphone.

87.     These intrusions would be highly offensive to any reasonable person and were (and remain) highly offensive to Plaintiff.

88.     Defendants' conduct constitutes an egregious breach of the social norms underlying the right to privacy.

89.     Plaintiff has been harmed by the capture of intimately personal facts and/or communications, which loss of privacy and confidentiality has caused Plaintiff to experience mental anguish, emotional distress, worry, fear, and other harms.

90.     Defendants' conduct was outrageous, willful, wanton, and reckless because of the Defendants' evil motive and their reckless indifference to the rights of others.

91.     Plaintiff has suffered damages as a direct and proximate result of Defendants' conduct.

WHEREFORE, Plaintiff respectfully demands compensatory and punitive damages, in an amount in excess of $75,000.00, and such other and further relief as the Court deems just.

## COUNT FOUR

## VIOLATION OF NEVADA REVISED STATUTES §§ 200.610-200.690

92.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through ninety-one (91) above, as if the same were fully rewritten herein.

93.    Nevada Revised Statutes § 200.690 creates a private right of action for any person whose wire or oral communication is intercepted without his or her consent, against any person who willfully and knowingly intercepts or attempts to intercept any wire communication.

94.    While there is an exception to the Nevada law for the interception of in-person oral communications with the consent of one party to the communication, the interception of wire communications requires the consent of all parties to the communication to be legal.

95.    At the time of the May 21, 2024 interception set forth above, Plaintiff had ceased to be an employee of La Macchia Group more than a month earlier, and no prior consent by Plaintiff could validly apply.

96.    Defendants knowingly and willfully continued to target Plaintiff with their corporate spying program anyway.

97.    Plaintiff's communications on May 21, 2024 were one or more wire communications.

98.    Defendants knowingly and willfully intercepted those wire communications.

99.    Plaintiff had an expectation of privacy in the communications, which was reasonable and/or justifiable under the circumstances.

100.    Defendants intercepted the communications without the prior consent of Plaintiff.

101.    No emergency situation existed in which it would be impractical to obtain a court order as required by N.R.S. §§ 179.410 through 179.515, inclusive, before the interception.

102.    Defendants would not have been able to secure a Nevada court order regardless, for their course of illegal wiretapping activity, nor a later court order ratifying their conduct.

103.    Defendants' interception of Plaintiff's communications was therefore unlawful under Nevada law.

104.    Defendants' conduct was willful and knowing; was done with oppression, fraud, or malice, express or implied; was intended to injure Plaintiff; and was done with a conscious disregard of the rights or safety of others, including but not limited to Plaintiff.

105.    Plaintiff has been damaged as a direct and proximate result of Defendants' conduct.

WHEREFORE, Plaintiff respectfully demands actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher, pursuant to N.R.S. § 200.690(1)(b)(1); punitive damages pursuant to pursuant to N.R.S. § 200.690(1)(b)(2); his costs reasonably incurred in this action, including a reasonable attorney's fee, pursuant to N.R.S. § 200.690(1)(b)(3); and such other and further relief as the Court deems just.

## COUNT FIVE

## CIVIL CONSPIRACY

106.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through one hundred five (105) above, as if the same were fully rewritten herein.

107.    Defendants are two or more persons who combined or agreed to a conspiracy, with the intent to do an unlawful act or acts, or to do an otherwise lawful act by unlawful means, specifically the La Macchia Group corporate spying program as set forth more fully above.

108.    Defendants acted with malice and an intent to injure Plaintiff.

109.    This unlawful intent was without justification.

110.    Numerous overt acts were done by various Defendants in pursuance of the common purpose or design, as set forth more fully above.

111.    Actual legal damage resulted to Plaintiff, as a direct and proximate result of Defendants' conspiracy.

WHEREFORE, Plaintiff respectfully demands compensatory and punitive damages, in an amount in excess of $75,000.00, and such other and further relief as the Court deems just.

Date: November 18, 2024                  Respectfully submitted,

                                         HENDERSON, COVINGTON, MESSENGER,
                                           NEWMAN & THOMAS CO., L.P.A.

                                         /s/ Richard J. Thomas
                                         RICHARD J. THOMAS (#0043954)
                                         6 Federal Plaza Central, Suite 1300
                                         Youngstown, OH 44503
                                         Phone: (330) 744-1148
                                         Fax: (330) 744-3807
                                         Email: rthomas@hendersoncovington.com
                                         *Counsel for Plaintiff David Welsh*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

                                         /s/ Richard J. Thomas
                                         *Counsel for Plaintiff David Welsh*